UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMELDA MENDOZA DE SANTACRUZ,<br><br>           Plaintiff,<br><br>      v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>           Defendant. | Case No. EDCV 12-100 JC<br><br>MEMORANDUM OPINION |

**I.    SUMMARY**

On January 25, 2012, plaintiff Imelda Mendoza de Santacruz ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; January 27, 2012 Case Management Order ¶ 5.

//

1

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On January 26, 2009, plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits. (Administrative Record ("AR") 19, 135, 140). Plaintiff asserted that she became disabled on November 1, 2008, due to depression. (AR 152). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel and assisted by a Spanish language interpreter), plaintiff's husband, a medical expert and a vocational expert on July 29, 2010. (AR 33-66).

On September 21, 2010, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 19-29). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: psychotic disorder (not otherwise specified), mood disorder (not otherwise specified), and anxiety disorder (AR 21); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 21); (3) plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels with certain nonexertional limitations[2] (AR 22-23); (4) plaintiff could not

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

[2] The ALJ determined that plaintiff could perform a full range of work at all exertional levels, but was limited to jobs that (1) involved simple, repetitive tasks; (2) required no public interaction; (3) did not involved hypervigilance or fast-paced work; and (4) did not require being responsible for the safety of others. (AR 22-23).

perform her past relevant work (AR 27); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically cleaner, industrial cleaner, and laundry room attendant (AR 28-29); and (6) plaintiff's allegations regarding her limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 25).

The Appeals Council denied plaintiff's application for review. (AR 1).

### III.    APPLICABLE LEGAL STANDARDS

#### A.    Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)    Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)    Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)    Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R.

///

|   |   |   |
|---|---|---|
|   |   | Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four. |
|   | (4) | Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five. |
|   | (5) | Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled. |

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

### B.  Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and

evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

### A. The ALJ Properly Evaluated the Medical Opinion Evidence

#### 1. Pertinent Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[3] See id. In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

---

[3]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted). The ALJ can reject the opinion of a treating physician in favor of another conflicting medical opinion, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Id. (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion). "The ALJ must do more than offer his conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct." Id. "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).

**2.     Analysis**

In an August 2, 2009 Narrative Report, plaintiff's treating physician, Dr. Jesus A. Bucardo (1) diagnosed plaintiff with: mood disorder (not otherwise specified), rule out major depressive disorder vs. bipolar depression vs. borderline personality disorder; (2) noted that plaintiff had ruminative thought, auditory delusions, delusions/paranoid thoughts, insomnia, depression, anxiety, panic episodes, manic syndrome, suicidal ideation, decreased energy, isolation, and

social withdrawal, difficulty concentrating on tasks, and was mildly impaired in memory and judgment; and (3) opined that plaintiff (a) had no ability to maintain a sustained level of concentration, (b) could do only very simple tasks for brief periods of time, (c) could not adapt to new or stressful situations, (d) could not interact appropriately with anyone but her family, and (e) could not complete a 40 hour work week without decompensating (collectively "Dr. Bucardo's Opinions"). (AR 230). Plaintiff contends that a remand or reversal is warranted because the ALJ's rejection of Dr. Bucardo's Opinions was not supported by substantial evidence. (Plaintiff's Motion at 4-10). The Court disagrees.

First, the ALJ properly rejected Dr. Bucardo's Opinions as unsupported by the physician's own notes or the record as a whole. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (citation and internal quotation marks omitted); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"). For example, as the ALJ noted, contrary to the significant mental limitations stated in Dr. Bucardo's Opinions, Dr. Bucardo's records for plaintiff reflect multiple mental status examinations that were generally within normal limits, and that plaintiff's symptoms were "stable" when plaintiff was compliant with prescribed medication. (AR 25-26, see AR 230, 243, 248, 256, 265, 274, 313, 324, 325, 332, 340, 354-55, 367). Similarly, the results of mental status examinations of plaintiff conducted by a social worker in Dr. Bucardo's office were, on the whole, unremarkable. (AR 232, 235, 238, 240, 246, 249, 251, 253, 257, 259, 263, 266, 276, 311, 315, 320, 322, 330, 333, 335, 338, 341, 343, 345, 349, 351, 356, 359, 362, 364).
///

Second, the ALJ properly rejected Dr. Bucardo's Opinions in favor of the conflicting opinions of the state-agency examining psychiatrist, Dr. Romualdo R. Rodriguez (who determined that plaintiff had "no functional limitations from a psychiatric standpoint") (AR 212), and the medical expert, Dr. David M. Glassmire (who testified that plaintiff would be "[limited] to simple, repetitive tasks, no interaction with the public, no task requiring hypervigilance, and no fast paced work") (AR 52). The opinion of Dr. Rodriguez was supported by his independent psychiatric examination of plaintiff (AR 207-13), and thus, even without more, constituted substantial evidence upon which the ALJ could properly rely to reject the treating physician's opinions. See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). Dr. Glassmire's testimony also constituted substantial evidence supporting the ALJ's decision since it was supported by the other medical evidence in the record as well as Dr. Rodriguez's opinion and underlying independent examination. See Morgan, 169 F.3d at 600 (testifying medical expert opinions may serve as substantial evidence when "they are supported by other evidence in the record and are consistent with it").

Finally, Dr. Glassmire did not, as plaintiff contends, rely solely on the same clinical findings used by Dr. Bucardo (*i.e.*, Dr. Bucardo's treatment records). Cf., e.g., Orn, 495 F.3d at 632 ("When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not '"substantial evidence."'"). Instead, as just noted, Dr. Glassmire also relied, in part, on the opinion of Dr. Rodriguez which itself was based on the examining physician's independent clinical findings (*i.e.*, "findings based on objective medical tests that the treating physician has not [] considered"). Id. ("[W]hen an examining physician provides

8

'independent clinical findings that differ from the findings of the treating physician,' such findings are 'substantial evidence.'") (citations omitted). The record belies plaintiff's assertion that "Dr. Glassmire . . . *rejected* the opinion of Dr. Rodriguez . . . ." (Plaintiff's Motion at 8) (citing AR 54-55) (emphasis added). At the hearing, Dr. Glassmire did not entirely reject, but instead merely discounted the weight given to Dr. Rodriguez's opinion. (AR 54-55) ("I did not give *as much* weight . . . to [Dr. Rodriguez's] opinion") (emphasis added). It was the sole province of the ALJ to resolve any conflict in this properly supported medical opinion evidence. Andrews, 53 F.3d at 1041.

Accordingly, a remand or reversal is not warranted on this basis.

### B.     The ALJ Properly Evaluated Plaintiff's Credibility

#### 1.     Pertinent Law

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. Orn, 495 F.3d at 635 (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). If the record establishes the existence of a medically determinable impairment that could reasonably give rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect. Robbins, 466 F.3d at 883 (citations omitted). Where the record includes objective medical evidence that the claimant suffers from an impairment that could reasonably produce the symptoms of which the claimant complains, an adverse credibility finding must be based on clear and convincing reasons. Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1160 (9th Cir.

2008) (citations omitted). The only time this standard does not apply is when there is affirmative evidence of malingering. Id. The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

To find the claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal contradictions in the testimony, or conflicts between the claimant's testimony and the claimant's conduct (*e.g.*, daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment). Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at 680-81; SSR 96-7p. Although an ALJ may not disregard such claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ may consider in his credibility assessment. Burch, 400 F.3d at 681.

### 2.   Analysis

Plaintiff contends that the ALJ inadequately evaluated the credibility of her subjective complaints. (Plaintiff's Motion at 12-18). The Court disagrees.

First, an ALJ may properly discount a plaintiff's credibility based on an unexplained failure to seek treatment consistent with the alleged severity of subjective complaints. See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc) (in assessing credibility, ALJ may properly rely on plaintiff's unexplained failure to request treatment consistent with alleged severity of symptoms); see also Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (in assessing credibility, ALJ properly considered doctor's failure to prescribe and claimant's failure to request any serious medical treatment for supposedly excruciating pain); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999) (lack of

treatment and reliance upon nonprescription pain medication "clear and convincing reasons for partially rejecting [claimant's] pain testimony"); Fair, 885 F.2d at 604 (ALJ permissibly considered discrepancies between the claimant's allegations of "persistent and increasingly severe pain" and the nature and extent of treatment obtained). Here, as the ALJ noted, the medical evidence reflects that despite plaintiff's complaints of disabling mental limitations, plaintiff made "relatively infrequent trips to the doctor," and received no more than routine/conservative treatment for her symptoms. (AR 24-26) (citing, *inter alia*, Exhibits 5F [AR 229-291], 7F [AR 308-68]). Plaintiff fails to demonstrate that she was proscribed or even requested any more aggressive medical treatment or, as plaintiff alleges (without any citation to the record) (Plaintiff's Motion at 15), that non-conservative treatment options did not exist for plaintiff's impairments. See Burch, 400 F.3d at 683 ("claimant carries the initial burden of proving a disability"); Meanel, 172 F.3d at 1113 ("The claimant bears the burden of proving that she is disabled.").

Second, the ALJ properly discounted plaintiff's subjective complaints as inconsistent with plaintiff's daily activities. See Thomas, 278 F.3d at 958-59 (inconsistency between the claimant's testimony and the claimant's conduct supported rejection of the claimant's credibility); Verduzco v. Apfel,188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony and actions cited as a clear and convincing reason for rejecting the claimant's testimony). For example, as the ALJ noted, contrary to plaintiff's allegations of disabling mental symptoms and limitations, plaintiff stated in a Function Report that she would care for her daughter; At the hearing plaintiff testified that she would attempt to take "primary care responsibilities for [her] daughter." (AR 23-24, 40, 175). During a consultative examination plaintiff reported that she had driven her own vehicle to the evaluation. (AR 24, 207-09). Plaintiff also told the examining psychiatrist that she could take care of household chores, cook and

make snacks, go to the store, run errands and handle her own personal care and finances. (AR 209). While plaintiff contends that none of the foregoing activities "relate to the ability to perform gainful work activity over a 40 hour, five day work week" (Plaintiff's Motion at 15), the Court will not second-guess the ALJ's reasonable determination that they do, even if such evidence could give rise to inferences more favorable to plaintiff.

Third, the ALJ properly discredited plaintiff due to internal conflicts within plaintiff's own statements and testimony. See Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir.), as amended (1997) (in weighing plaintiff's credibility, ALJ may consider "inconsistencies either in [plaintiff's] testimony or between [her] testimony and [her] conduct"); see also Fair, 885 F.2d at 604 n.5 (9th Cir.1989) (ALJ can reject pain testimony based on contradictions in plaintiff's testimony). For example, as the ALJ noted, although plaintiff testified at the hearing that she did not drive, she also stated that she still had a valid driver's license, and had previously told the examining psychiatrist that she had her own vehicle and had been able to drive herself to the examination. (AR 24) (citing AR 40; Exhibit 1F at 1, 3 [AR 207, 209]). As the ALJ also noted, contrary to the statement in plaintiff's Function Report that plaintiff had problems getting along "with neighbors," plaintiff told the examining psychiatrist that "she [had] a good relationship with family, relatives, friends, *neighbors,* and others." (AR 24) (citing Exhibits 5E at 6 [AR 179]; 1F at 3 [AR 209]) (emphasis added).

Finally, the ALJ properly discounted plaintiff's credibility due, in part, to the absence of supporting objective medical evidence. Burch, 400 F.3d at 681; Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citation omitted)). As the ALJ noted, and as discussed above, plaintiff's treatment records reflect mental status

1  examinations that were generally within normal limits, and that plaintiff's
2  symptoms were to some degree controlled by her medication.  (AR 24-26) (citing,
3  *inter alia*, Exhibits 5F [AR 229-291], 7F [AR 308-68]).
4      Accordingly, a remand or reversal is not warranted on this basis.

## V.  CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  June 18, 2012

                                           /s/
                                    Honorable Jacqueline Chooljian
                                    UNITED STATES MAGISTRATE JUDGE